# ROCKINGHAM.

## DECEMBER TERM, A. D. 1853.

## GILMAN v. CUTTS.

Where the defendant was absent from the State, but his domicil and usual place of abode were within the State, so that legal service could have been made by leaving a copy there, it was held that the statute of limitations did not stop running against the claim, on account of the defendant's absence, and that the action could not be maintained.

The defendant, having a domicil and a wife in this State, usually went out of the State to get employment in the spring, and returned in the autumn, and did so for some years, leaving his wife in a house that he hired for her, and where he supported her. During a part of each year, for some years in succession, he worked in Massachusetts, coming home on Saturday and returning on Monday. He paid his taxes in this State each year. *Held*, that the time during which the defendant was absent from the State was not to be excluded in the computation of the time limited for the commencement of personal actions, according to the 9th section of chapter 181 of the Revised Statutes.

ASSUMPSIT upon a promissory note, dated October 1, 1838, for $197, payable on demand.

Plea, the general issue, accompanied with a brief statement of the statute of limitations.

A verdict was returned for the plaintiff, upon which it was agreed judgment should be entered, or that the same should be set aside and a new trial granted, according to the opinion of this court, upon the following facts.

The defendant, at the date of the note, resided at Exeter, and was married. In the spring of 1839 he went to Cincinnati, and remained there until the fall of 1841 or 1842.

During that period his wife resided at her father's house, in Exeter, and had rooms there, and some furniture, and the defendant left her money enough for her support. After his return this time, he remained in Exeter about nine months, and then went west again, and was absent, as before, about eight or nine months. It did not appear that the defendant had ever worked in Exeter, excepting in the winter seasons, since his return from the west. After his return from the west, he generally went away out of the State to work, going away in March, sometimes about the first of March, and returning in November, about Thanksgiving day. In 1846, the defendant hired a house in Exeter, and occupied it almost four years in the way herein stated. His wife resided in the house so hired, generally, during these four years. The defendant has worked in Massachusetts since December, 1846, in every year. He usually came home once each fortnight; sometimes more frequently, coming home on Saturday night and returning on Monday morning. He made provision for his wife's support, and hired some one to do the work for her. He paid his taxes in Exeter in each year.

Upon the foregoing facts appearing, the defendant objected that the absences and residence of the defendant out of this State, were under such circumstances and of such a character, that the time of the same was not to be excluded in the computation of the time limited for the commencement of personal actions, according to the provisions of chapter 181 of the Revised Statutes.

*Wood,* for the defendant.

It was decided, in this action, at the December term, 1851, 3 Foster's Rep. 376, that every absence of the defendant from the State, which would prevent the plaintiff from commencing process, must prevent the statute from running and such is the reason laid down. Angell on Lim. 204; 1 Cowen 356.

The plaintiff contends that the defendant must be within the State, so as to give the plaintiff an opportunity to arrest him. But such could not be the construction of the statute, for that would determine that any and all absences from the State would prevent the statute from running, a construction too strong, as the statute, by the wording of the same, evidently contemplates some absences from the State that are not to be reckoned. It is not only absence from the State, but residence, coupled with the same, that are to be reckoned.

It is now well settled that the old phrase " beyond seas," and the phrase " out of the State," mean the same thing. *Sleight* v. *Kane*, 1 Johns. 76; *Ruggles* v. *Keeler*, 3 Johns. 263; *Fowler* v. *Hunt*, 10 Johns. 464; *Fair* v. *Roberdeau*, 3 Cranch 174. And that both mean the same as beyond the limits or jurisdiction of the State. *Murray* v. *Baker*, 3 Wheat. 341; *Bank of Alexandria* v. *Dyer*, 14 Peters 141.

If the defendant, while in Boston or Charlestown, or at the west was, during any part of the time, subject to the jurisdiction of the court, then process might have been commenced on the note, and a judgment would have been good, founded on a service by leaving a summons at defendant's house. Story on Conf. of Laws, §§ 586–589, 604–609; *Shumway* v. *Stillman*, 6 Wend. 447; *Fullerton* v. *Houghton*, 11 Vt. Rep. 425; *Hall* v. *Williams*, 6 Pick. 232; *Kittredge* v. *Emerson*, 15 N. H. Rep. 227; *Bissell* v. *Briggs*, 9 Mass. Rep. 462.

The defendant, as it appears by the case, had hired a house in which his wife lived, and it was furnished all the time he was in Boston and Charlestown; he came home often, paid taxes and voted. During all that time he claimed this as his home, in which to exercise all his civil rights, was to all intents a resident of Exeter, and within the jurisdiction of this court. Story on Conflict of Laws, §§ 537, 46, 47; *Knox* v. *Waldoborough*, 3 Greenl. 455; 8 Greenl. 200; *Williams* v. *Whitney*, 11 Mass. 424; *State* v. *Hallett*, 8 Alabama Rep. 159; 2 Kelley's (Georgia) Rep. 171. And

a temporary absence would not divest him of the character of a citizen of this State. 2 Mumford 397; 3 Marshall 549; 4 Mass. Rep. 556; 11 Mass. Rep. 350.

The next question that arises is, would a service made on the defendant, according to the statute, by leaving a summons at the defendant's house here, have been good? The wife and family were here, and it appears that the defendant came home as often as once in a fortnight, and sometimes oftener, so that the court would not have intervened between the service and the defendant's return, giving ample opportunity to defend.

If such service is to be holden void or voidable, then it seems that the mode of service, by leaving a summons, is to be attended with great fear and hazard. But we believe that such service must be holden to be good. *Everts* v. *Gore,* 10 Vt. Rep. 161; *Fullerton* v. *Houghton,* 11 Vt. Rep. 425; *Ames* v. *Winson,* 19 Pick. 247. In the case of *Bartlett* v. *Knight,* 1 Mass. 409; it is laid down that the return of the officer that a summons was left at the defendant's last and usual place of abode, is sufficient authority to the court to proceed to judgment.

The defendant contends, even if the foregoing positions are wrong, that his returns from Boston and Charlestown, on Saturdays, were of such a nature as to have given the plaintiff an opportunity to commence his action, unless it can be presumed, from the facts in the case, that they were of a secret character, which, we think, the case does not warrant. They were the returns of a laborer, at the end of his week's work, to his family; there is not a single appearance of concealment from this demand in any of the defendant's acts from the date of the note to the present time; but, on the contrary, he lived here openly winters, and returned home often and regularly while at work in Massachusetts. But we consider that the question whether the defendant's returns to his family on Saturdays were open

and without concealment is a matter of fact to be left to jury.

In the case of *Crehore* v. *Mason*, 23 Maine Rep. 413, their statute, similar to our's, was pleaded, and the court held that the absence of the defendant, at Washington, for four months, could not be reckoned as an absence out of the State, within the meaning of the statute. And the decision upon the facts in the case is decisive of this case.

But if it should be holden that the absences of the defendant, at the west and in Massachusetts, were to be considered as a residence out of the State, within the meaning of the statute, then the question should be left to the jury to find how long these absences were, for it makes a material difference whether the first visit to the west was two and a half or three and a half years, and whether the absence in Massachusetts were three or four seasons, for by taking the lowest number, the defendant was then in the State more than six years before this suit was commenced, after the date of the note.

*Stickney & Tuck,* for the plaintiff.

The question arising in this case is, whether the kind of absences mentioned in the case, come within the exception in our statute of limitations. We supposed this question was settled by the decision of the court, in this case, at the December term, 1851. The same kind of absences are mentioned in that case that are mentioned in this; and the court decided " that any and every absence, whether temporary or otherwise, which is such that the creditor cannot, during the same, make legal service upon the debtor, must be reckoned."

Although this general principle was all that was necessary in that case, yet we supposed that the decision was intended to apply to the kind of absences mentioned in the case, and, consequently, that the court were of opinion that that kind of absences were within that exception. And we

still think that the decision in that case does settle the question arising in this.

What did the court mean and intend by a legal service ? We contend that it was a personal service; it must have been such a service as would be effectual to the creditor and conclusive upon the debtor, in case of a judgment. The creditor is entitled to such service ; he should have an opportunity, if he desired, to arrest the debtor, as that, oftentimes, is the only mode of collecting his debt, especially in cases where the debtor conceals his property; or if he desire to get judgment, he should have an opportunity to make personal service, so that his judgment would be good and conclusive. A service, by leaving a summons or copy at the usual place of abode, is good for some purposes, but it is not good for all purposes; a judgment rendered upon such service is not conclusive, even in this State; the debtor may apply to the court, and if it appeared that at the time of such service the debtor was absent from the State, and had no actual notice of the suit, the court would avoid the judgment, as they did recently in the case of *Henderson* v. *Pease*, in Rockingham county. Pease lived and had his home in Newmarket. He went into Massachusetts for a temporary purpose, and while thus absent, Henderson sued out a writ against him, which was served by attaching his property in Newmarket, and leaving a summons at his usual place of abode. Judgment was rendered against him on default. Pease applied to the superior court, and they gave him leave to bring an action of review.

We think it is clear that a judgment rendered upon such service would not be conclusive upon the debtor in another State, as it is where personal service is made, but the debtor may contest it; he may plead to an action of debt upon the judgment, that at the time of such service he resided in another State, or he may plead *nil debet*, and give the facts in evidence on the trial, and thus avoid the judgment. A judgment would not be good in another State, unless it ap-

peared from the record that the defendant had personal
service or notice of the suit. *Hall & a.* v. *Williams & a.* 6
Pick. 232; *Thrasher* v. *Blackbourne*, 1 N. H. Rep. 242.

In this last case the court say, " The common law never
recognized judicial proceedings as foreign judgments, unless
rendered by a court of record, upon personal notice given to
the defendant, on his appearance to the action. Without
these requisites such foreign judgment is a mere nullity."

It would not be safe for the creditor to rely upon a judg-
ment rendered upon such service, unless he was prepared
with proof that the defendant received the summons, or
had actual notice of the suit.

It would seem, therefore, that the legal service mentioned
by the court must be held to be a personal service, and that
any absence from the State which would prevent the credi-
tor from making a personal service upon the debtor, must
come within the statute.

The absences, mentioned in this case, are clearly of that
character; the defendant was at the west and in Massachu-
setts, at work, afterwards every season, from early in March
to the last of November, a period of nearly nine months.
While he was thus absent, the plaintiff could not make a
personal service upon him. The fact that the defendant's
wife remained in the State, and that he retained his legal
residence here, cannot take the case out of that exception;
if it did, we cannot see how any absence could come within
that exception, unless it were a legal residence out of the
State. Neither can the fact that he returned to the State
on Saturday night and left on Monday morning, take the
case out of that exception. A return, to have any effect,
must be such that the plaintiff could make personal service
upon him. A return, in the manner mentioned, is not such
return. No service can be made on Sunday, and the credi-
tor is entitled to the Sabbath as a day of rest, and it could
not be expected or required of him that he should be look-
ing after his debtors on that day. If he made inquiries for

him at his wife's residence, or sent an officer there on any week day, at any reasonable hours, the defendant would be absent, and no personal service could be made upon him. That would be reasonable diligence, and all that could be required of him. His returning home as often as once in two weeks is not material; the duration of the absence is no test; if it is, where is the line to be drawn, so that it can be said that if a debtor is absent so long, his absence is to reckoned, but if he is absent any less time, his absence is not to be reckoned? The most that the defendant can claim on that ground is, that the time he was in this State should not be reckoned as absences.

We think the true rule to be, or that the rule may safely go thus far, that where the debtor's regular business is out of the State, and he resides out of the State for the purpose of attending to that business, it is an absence from and residence out of the State, within the meaning of the statute, although the debtor's family remained in the State, and he retained his legal residence here. Where the debtor's business and residence are in the State, and he goes out of the State on temporary business, it may be said that such an absence does not come within the exception; but it is different where the debtor's business is out of the State, as where he goes out of the State to work for the season, as in this case; in such case, the absence is such that the creditor cannot make a personal service upon him, and we can see no reason why such absences should not be reckoned.

It is said that service may be made by leaving a summons at his usual place of abode. It is a sufficient answer to that, that such service is not good for all purposes; and, besides, the creditor should have an opportunity to arrest his debtor, and any absence which prevents that should be reckoned. We think the authorities, in cases analagous to this, will support such a view of the case.

It is well settled that a temporary residence in the State a few days, for temporary purposes, under the old statute,

was sufficient to set the statute running. *White* v. *Bailey,* 3 Mass. Rep. 273 ; *Fowler* v. *Hunt,* 10 Johns. 464 ; 3 Johns. 267 ; 1 Pick. 263 ; 16 Pick. 359 ; 3 Cranch 174 ; 15 Vt. Rep. 727 ; 3 N. H. Rep. 121.

If a temporary return is sufficient to set the statute running, it would seem, for similar reasons, that a temporary absence should be sufficient to prevent the statute from running.

In all these cases it is laid down that the return must be public, so that the creditor, using due diligence, could arrest the debtor. That is the test when applied to a return, and we think the same test should be applied to the absence of the debtor, and if the absence be such that the creditor, using due diligence, could not arrest the debtor, the absence should prevent the running of the statute. In the case of *White* v. *Bailey,* before cited, the court put both upon the same ground. The statute, the court say, ought not to begin to run, because the creditor could not take the body or property of the debtor, in consequence of his absence out of the State ; so the return which would cause the statute to commence running must be such a return as would enable the creditor, using due diligence to arrest his debtor as security of the debt.

In the case of *Little* v. *Hunt,* before cited, the court say that the object of the service is that the creditor shall have an opportunity of arresting the debtor or attaching his property ; and for this purpose he must know, or have the means of knowing, that he is within the State.

In the case of *Wheeler* v. *Brewer,* 5 .Washb. 113, it is said : " It is not sufficient in such case, in order to prevent the running of the statute, that the defendant had such a title to property within the State during the time of his absence, that a writ might be legally served, for the mere purpose of keeping the demand alive, but the property must be capable of yielding a substantial benefit to the plaintiff."

In the case of *Cole* v. *Jessup,* 2 Barb. Sup. Ct. Rep. 309,

Gilman v. Cutts.

it is said: " A return which set the statute of limitations in motion must be known to the creditor, and be under such circumstances as to enable the creditor, with ordinary diligence, to commence a suit against the debtor personally."

It has been held in Alabama, Vermont, and Illinois, that temporary absences prevent the running of the statute. *Smith* v. *Bond,* 8 Ala. Rep. 386; *Dunning* v. *Chamberlain,* 6 Vt. Rep. 127; 3 Gilman (Ill.) Rep. 637; 4 Gilman (Ill.) Rep. 125.

In the case in Illinois, it is said that the statute stops running as often as the debtor removes from the State, and commences running upon his return. It does not appear in any of these cases that the duration of the absences was at all material.

As remarked by the court in the former opinion on this action, the tendency of legislation has been to enlarge these exceptions in the statute of limitations, and we think courts have been disposed to give them a liberal construction, and include all and every absence when the debtor was actually residing out of the State. If the court now put upon the exception the narrow construction contended for by the defendant, and exclude all absences like those in this case, while the defendant was absent at work in Massachusetts, they will limit and almost entirely nullify the operation of the exception, for there could hardly be any absences that would come within the exception, unless it were a legal residence out of the State.

The question in this case is not whether the plaintiff might not, by using due diligence, make good service upon the defendant in winter, or on some occasion when he returned in the summer; perhaps he might, and so could any creditor, probably, make good service upon the debtor before he left the State. But the question is whether the time when he was actually absent from the State is to be reckoned. We think it should be, because it comes within the plain letter and meaning of the statute. He was then ac-

tually absent from and residing out of the State, attending to his business out of the State.

GILCHRIST, C. J. We have settled, in the case of *Gilman* v. *Cutts*, 3 Foster's Rep. 376, that any and every absence from the State, whether temporary or otherwise, which is such that the creditor cannot, during the absence, make legal service upon the debtor, must be reckoned, and that the statute ceased to run during each and all of the absences, if they were such that legal service could not be made upon him.

If, then, the absences in this case were such that legal service could be made, the operation of the statute continued, and the verdict must be set aside.

The note in suit is dated on the 1st day of October, 1838. As nearly as can be estimated from the facts stated in the case, in the course of twelve years from the date of the note, the defendant has been absent from the State about eight years, and has been at home about four years.

The ninth section of chapter 181 of the Revised Statutes provides that if the defendant, at the time the cause of action accrued, or, afterwards was absent from and residing out of the State, the term of such absence shall be excluded in the computation of the several times limited for the commencement of personal actions.

The question, then, is, whether the defendant was, during these various periods, " absent from and residing out of the State," in the sense in which these words are used in the statute.

Upon the authority of the case above cited, the statute runs against the claim if legal service could be made during the periods of the absence of the defendant. We may for the present lay aside the period during which he was absent at Cincinnati, where he was from the spring of 1839 until the fall of 1841 or 1842, as the verdict must be set

Gilman *v.* Cutts.

aside, in one view of the case, without regarding this period of absence.

It is very clear that the defendant, whenever he left Exeter, had the intention of returning, and it is equally clear that his domicil and residence were at Exeter during the whole period embraced in the case. He went away to get employment. From the year 1846 to the year 1850 he hired a house in Exeter, which was occupied by him and his wife. He supported his wife in Exeter, and paid his taxes there in each year. Once in each week or two, he came home, remaining from Saturday until Monday. His domicil, therefore, was in Exeter, and there was his usual place of abode, consequently the writ might have been served by leaving an attested copy at his usual place of abode, and personal notice might have been given him before judgment if, out of abundant caution, it was desired. The statute provides that service may be made by leaving a copy at the usual place of abode. Rev. Stat. ch. 183, § 2.

The facts stated in the case sustain the plea of the statute of limitations, and the plaintiff cannot recover.

*Verdict set aside.*